UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALLINGTON DOTTIN,

     Petitioner,

v.                                                **CASE NO. 8:07-CV-884-T-27MAP**

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

     Respondents.

_____/

## O R D E R

     Petitioner, an inmate of the Florida penal system, initiated this action, through counsel, by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") (Dkt. 1), and a memorandum of law in support of the petition (Dkt. 2). Petitioner challenges his convictions for second degree murder and attempted first degree murder entered in 2003 by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida. Respondents filed a response to the petition (Dkt. 13). Petitioner filed a reply to the response (Dkt. 16).

     A recitation of the procedural history of Petitioner's criminal convictions is not necessary to the resolution of his habeas claims because Respondent does not dispute the timeliness of the petition. The matter is now before the Court for consideration on the merits of Petitioner's claims. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2010).

## STANDARDS OF REVIEW

     Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Ineffective Assistance of Counsel Standard**

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland's* two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

**DISCUSSION**

**Ground One**

In Ground One, Petitioner complains that trial counsel was ineffective in failing to move to strike juror Denny McCarty ("McCarty") for cause. Petitioner asserts that when questioned by defense counsel during voir dire, McCarty responded with "answers indicating prejudice against those possessing guns in scenarios factually identical to Mr. Dottin's situation..." (Dkt. 1 at pg. 6). Petitioner notes that another prospective juror, Ms. Jones, stated during voir dire that she would have

2

difficulty being fair to Petitioner because he used a gun, and Ms. Jones was stricken from the jury for cause (Id.). McCarty, however, served on the jury. Finally, Petitioner further asserts in his memorandum of law that counsel was ineffective in failing to use a peremptory challenge on McCarty (Dkt. 2 at pg. 22).

Petitioner raised this claim in his state Rule 3.850 post-conviction motion (Respondent's Ex. 11).[1] The state trial court denied the claim as follows:

> In ground one of his Motion, Defendant alleges ineffective assistance of counsel for failure to move to strike a biased juror. Specifically, Defendant contends that juror Denny McCarthy stated that he would have a difficult time being unbiased, and gave answers during jury selection that indicated he could not be an impartial juror in Defendant's case. Additionally, Defendant points out that counsel did move to strike another juror who demonstrated this same type of bias during jury selection. Defendant argues that counsel's failure to move to strike this juror for cause the way counsel moved to strike the other biased juror prejudiced Defendant at trial because it prevented him from receiving a fair trial before an impartial jury. In its Response, the State explains that juror McCarthy stated that he might have a difficult time being unbiased only in cases where the person carrying a gun did not have a permit to do so. (*See* State's Response, attached). As such was not the case here, the State explains, Defendant has failed to demonstrate how this juror was biased, and therefore has failed to demonstrate how counsel was deficient for failing to move to strike the juror. ( *See* State's Response, attached.) The Court finds the State's Response to be persuasive, and finds that Defendant warrants no relief on ground one of his Motion for Post- Conviction Relief.

(Respondent's Ex. 14).

---

[1] The Court notes that Petitioner did not raise his claim that counsel was ineffective in failing to use a peremptory challenge on McCarty in either his Rule 3.850 motion, or his Initial Brief on appeal from the denial of his Rule 3.850 motion (Respondent's Exs. 11, 19). Thus, the claim is unexhausted. "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003). Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Petitioner's claim is now procedurally barred in state court by the two-year limitation of Rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and the state's successive petition doctrine. *E.g., Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State* , 632 So. 2d 48, 51 (Fla. 1993). Accordingly, since Petitioner has failed to exhaust state remedies that are no longer available, the failure is a procedural default which bars federal review of this claim. Petitioner has not alleged nor demonstrated cause and prejudice for his default, or that review of this claim is necessary to correct a fundamental miscarriage of justice.

Petitioner's claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror.[2] To establish the prejudice prong of *Strickland*, Petitioner must demonstrate that, but for counsel's failure to move to strike McCarty for cause, the result of his trial would have been different. *Strickland*, 466 U.S. at 694. In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Smith v. State*, 28 So. 3d 838, 859 (Fla. 2009) (citing *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984)). *See also*, *Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("[T]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."). To establish that McCarty serving on the jury prejudiced him, Petitioner must demonstrate that McCarty was actually biased against him. *See Smith v. Phillips*, 455 U.S. 209, 215 (1981). Based on a review of the record, the Court concludes that Petitioner has not demonstrated that McCarty was actually biased against him, and that but for counsel's failure to move to strike McCarty for cause, the result of the trial would have been different.

In support of his claim that counsel was ineffective in failing to move to strike McCarty for cause, Petitioner points to the transcript of the jury selection proceeding. Having reviewed the voir dire transcript, the Court concludes that Petitioner does not demonstrate that McCarty was actually biased. McCarty was asked if he "would find it difficult to give a person a fair trial, just because that person was carrying a gun without regard for the circumstances under which the shooting took

---

[2]*Turner v. Murray,* 476 U.S. 28, 36 n.9 (1986) ("The right to an impartial jury is guaranteed by both the Sixth Amendment . . . and by principles of due process.").

place?" (Respondent's Ex. 1, Vol. II at pg. 145). McCarty answered "Well, possibly. I mean, if you're going out or whatever, you know, you're going off to have a good time, I don't see the necessity of carrying a gun, personally. I mean this is not the Wild Wild West." (Id.). Subsequently, however, when defense counsel asked "Based upon everything that you've heard so far, are there any of you who now, in just reflection and in candor, would just simply rather not serve on this jury, because you just don't feel that you can be fair to both sides?" McCarty did not express any concern that he could not be fair (Id. at pgs. 149-50). [3]   Again, the test in Florida for determining juror competency is "whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Smith v. State*, 28 So. 3d at 859. Although McCarty answered that he "possibly" "would find it difficult to give a person a fair trial, just because that person was carrying a gun without regard for the circumstances under which the shooting took place" because he did not "see the necessity of carrying a gun" when going out "to have a good time," Petitioner does not demonstrate that McCarty was unable to put aside his bias and return a verdict based on the evidence and the law. Thus, it is likely that even if counsel had moved to strike McCarty for cause, his motion would have been denied.[4]

In further support of his claim, Petitioner argues that Ms. Jones, who "testified that she would have difficulty being fair to Mr. Dottin based on his use of a gun[,]" was stricken from the jury for cause (Dkt. 1 at pg. 6). Ms. Jones, however, clearly expressed that she could not be fair to the defendant (Respondent's Ex. 1, Vol. II at pg. 149). Moreover, Ms. Jones stated that she "had a

---

[3]Three prospective jurors expressed that they could not be fair to both parties (Id.).

[4]In support of this conclusion, the Court notes that when asked if "regardless of the circumstances of the shooting, that you would find it difficult to look at the circumstances and even consider self-defense, if one person had a gun and the other one didn't[,]" prospective juror 9 responded "I do..." (Respondent's Ex. 1, Vol. II at pg. 146). Defense counsel moved to strike prospective juror number 9 for cause, arguing that she stated "she would find it difficult to judge a case fairly, when one party has a gun and another one doesn't." (Respondent's Ex. 1, Vol. III at pg. 158).  The trial court denied defense counsel's motion to strike prospective juror number 9 for cause (Id.).

family member killed about 10 years ago in this same manner..." and that she "was still angry

because the system didn't do anything." (Id. at pgs. 31-32).   *Cf. Smith v. State*, 28 So. 3d at 860

("[W]e nonetheless conclude that the trial court should have stricken juror 89 for cause. Despite the

earnest expression of beliefs and the good intentions of juror 89, we cannot accept that a parent who

*testified as a witness during his own daughter's murder trial*      could not be influenced, albeit

unintentionally, by such a painful and tragic experience.") (emphasis in original).  Thus, unlike

McCarty, Ms. Jones expressly stated that she could not be fair to Petitioner under the circumstances.[5]

  In sum, Petitioner has not shown that juror McCarty was actually biased, and thus has failed

to show that McCarty's presence on the jury prejudiced him.  Petitioner has not demonstrated that

the state court's decision was either contrary to or an unreasonable application of clearly established

federal law.  Nor has he shown that the state court made an unreasonable determination of the facts

in light of the evidence presented. Accordingly, Ground One does not warrant federal habeas corpus

relief.

**Ground Two**

  In Ground Two, Petitioner contends that his attorney was ineffective in failing to object to

testimony the State introduced during trial regarding Petitioner smoking marijuana on the night

before the crimes.[6]  He complains that the testimony regarding his using marijuana the night before

the shootings was irrelevant and only served to show he had a propensity to commit bad acts.  He

argues that counsel's failure to object to this testimony prejudiced him by depriving him of a fair

---

[5]The Court notes that prospective juror number 22, who stated that she could not fairly and impartially serve as a juror in the case because her brother-in-law had been recently killed (Respondent's Ex. 1, Vol. II at pgs. 32-33, 150), also was stricken from the jury for cause (Id. at Vol. III, pgs. 162-63).

[6]The shootings occurred at approximately 1:00 a.m. the next day (Respondent's Ex. 1, Vol. IV at pgs. 313-14).

trial.

During the trial, the prosecution introduced testimony from Jason Neighbors that Petitioner

and two others smoked marijuana at an apartment hours before the shootings occurred (Respondent's

Ex. 1, Vol. IV at pgs. 314-15).  Petitioner also testified that he smoked marijuana the evening before

the shootings (Id. at Vol. VII, pg. 736).

Petitioner raised this claim in his state Rule 3.850 post-conviction motion.  In denying the

claim, the state trial court stated:

> In ground two of his Motion, Defendant alleges ineffective assistance of
> counsel for failure to object to irrelevant testimony. Specifically, Defendant contends
> that, during the testimony of a witness for the State, counsel failed to object to
> testimony regarding Defendant's use of marijuana on the night of the crime.
> Defendant states that this testimony was irrelevant, and prejudicial, as it
> demonstrated only that Defendant had a propensity towards committing illegal acts.
> Defendant states further that counsel's failure to object to this improper testimony
> prejudiced Defendant at trial, as Defendant's credibility was very important for his
> theory of defense. In its Response, the State explains that this testimony was not
> irrelevant as Defendant claims, and cites caselaw [sic] permitting such question. (See
> State's Response, attached.) As such, the State explains, counsel cannot be deemed
> deficient for failing to object to relevant testimony. (See State's Response, attached).
> The Court finds the State's Response to be persuasive, and finds that Defendant
> warrants no relief on ground two of his Motion for Post-Conviction Relief.

(Respondent's Ex. 14 at pg. 2).

Florida's Rules of Evidence prohibits evidence of a criminal defendant's prior bad acts or

collateral crimes in order to prove bad character or the defendant's propensity to act in a certain way.

Fla. Stat. § 90.404(2)(a). Bad acts evidence is admissible to prove a material fact in issue, including

motive, opportunity, intent, preparation and identity. Id. Further, "[a] party may attack a witness's

credibility by '[s]howing a defect of capacity, ability, or opportunity in the witness to observe,

remember, or recount the matters about which the witness testified.' § 90.608(4), Fla. Stat. (2006).

A witness's drug use at the time of the crime may impact her 'capacity or ability' to observe the

7

events in question." *Felton v. State*, 949 So. 2d 342, 344 (Fla. 4th DCA 2007).

Regarding the constitutionality of the underlying issue, the trial court's determination that Neighbor's and Petitioner's testimony that Petitioner smoked marijuana hours before the shooting was relevant is based on questions of state evidentiary law. It is not within the purview of federal courts to second-guess a state court's interpretation of state law. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A federal court can rule that a state court's evidentiary ruling violates due process only if "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York* , 432 U.S. 197, 202 (1977). Given that Petitioner testified at trial regarding the circumstances and events surrounding the shootings (see Respondent's Ex. 1, Vol. VII at pgs. 699-757), evidence of Petitioner's drug use hours before the shootings was admissible to impeach Petitioner regarding his capacity or ability to recount the events. *See Edwards v. State*, 548 So. 2d 656, 658 (Fla. 1989) ("evidence of drug use for the purpose of impeachment [is excluded] unless: (a) it can be shown that the witness had been using drugs at or about the time of the incident which is the subject of the witness's testimony...").

Petitioner does not show any valid basis for challenging Neighbor's or his own testimony regarding his marijuana use hours before the shootings. Consequently, defense counsel cannot be deemed ineffective for failing to object to the testimony. The state court's denial of this ground is objectively reasonable and entitled to deference by this Court pursuant to 28 U.S.C. § 2254(d) and (e). Accordingly, this Court finds that Petitioner is not entitled to relief on the claim presented in Ground Two.

**Ground Three**

In Ground Three, Petitioner complains counsel was ineffective in failing to hire expert witnesses to testify regarding the fact that the deceased victim had amphetamine present in his

system at the time Petitioner shot him. Petitioner asserts that a forensic pathologist could have testified that the victim had a large amount of amphetamine in his system at the time he was shot. Petitioner further asserts a toxicologist could have testified that a person under the influence of amphetamine has an increased propensity for aggressiveness and violence. Petitioner argues that this evidence would have supported his assertion that he acted in self-defense after the victim became violent and physically aggressive toward him.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and allegations of what a witness would have testified to are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)(citations omitted).[7] "Failing to call a particular witness constitutes ineffective assistance of counsel only when the absence of the witness's testimony amounts to the abandonment of a viable, outcome-changing defense." *See Jordan v. McDonough*, 2008 U.S. Dist. LEXIS 831, 2008 WL 89848, *5 (M.D. Fla. 2008)(citations omitted). "In all other cases, the failure to call a witness is either an objectively-reasonable strategic decision or a non-prejudicial error." *Id.* (citation omitted).

Regardless of whether Petitioner's counsel could or should have called expert witnesses, Petitioner fails to establish prejudice as a result of trial counsel not calling expert witnesses at trial. To establish prejudice, Petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). Because Petitioner fails to proffer any expert testimony, he fails to demonstrate a reasonable probability that,

---

[7]Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

but for counsel's failure to call expert witnesses at trial, the result of the trial would have been different.

Further, self-serving speculation about potential witness testimony is generally insufficient to support a claim of ineffective assistance of counsel. A petitioner must present evidence of the witness testimony in the form of actual testimony or an affidavit. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). Petitioner fails to present any actual testimony or affidavits in support of his claim. Because Petitioner has not presented any actual testimony or affidavit from an expert witness, this Court has no basis for determining whether a toxicologist's or forensic psychologist's testimony would have changed the outcome of the Petitioner's trial. Petitioner's self-serving speculation regarding what an expert witness may have testified to at trial will not sustain a claim of ineffective assistance of counsel.

The state trial court's rejection of Petitioner's ineffective assistance of counsel claim [8] constitutes a decision that was neither contrary to, nor an unreasonable application of, the *Strickland* two-part test. Accordingly, Petitioner is not entitled to relief on Ground Three.

**Ground Four**

In Ground Four, Petitioner complains that he was deprived of due process when the state trial court coerced the jury into rendering a guilty verdict by reading an *Allen* charge[9] to the jury after they had deliberated for over seven hours, and after the court had sent them back twice before without informing them that a hung jury was possible.

The record reflects that between approximately 11:06 a.m. and 3:32 p.m., the jury deliberated

---

[8]See Respondent's Ex. 14 at pgs. 2-3.

[9]"In an *Allen* charge, the judge instructs a deadlocked jury to undertake further efforts to reach a verdict. *See Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896)." *United States v. Chigbo*, 38 F.3d 543, 544 n.1 (11th Cir. 1994).

and had lunch (Respondent's Ex. 1, Vol. VIII at pgs. 913-14).  At approximately 3:25 p.m., the trial

court received a note from the jury asking if they could have a portion of the transcript of Petitioner's

testimony read to them (Id. at pg. 914).  At approximately 3:50 p.m., the jury returned to the

courtroom (Id. at 917).  Petitioner's entire testimony was read to the jury (Id. at pg. 918).  At

approximately 5:00 p.m., the jury left the courtroom and returned to the jury room for further

deliberations (Id.).  At approximately 6:40 p.m., the court received a note from the jury stating that

they were "at an impasse on both counts."  (Id. at pg. 919).  At approximately 6:52 p.m., the trial

court brought the jury back into the courtroom and asked them if they thought it would be helpful

to go home for the night and return in the morning (Id. at pg. 920-21).  He then assured them that

they would not be sequestered, and told them that if it would not be helpful to leave and return in

the morning that he could give them another instruction they could consider before returning to

deliberate (Id. at pg. 921).  The court then allowed the jury to return to the jury room to discuss

whether they wanted to break for the night (Id. at pgs. 921-22).  Between 6:55 p.m. and 7:10 p.m.,

the jury sent a note to the court stating they wanted to keep deliberating, asking how long they could

continue working, and requesting a break, coffee, and dinner (Id. at pg. 922).  The jury returned to

the courtroom at approximately 7:12 p.m. (Id. at pg. 924).  The court informed the jury that they

could have a 15 minute break outside, they could work for as long as they wanted to, the court would

order pizza and get coffee for them, and again stated that there was another instruction it could give

to them if they believed they were at an impasse (Id. at pgs. 924-27).  The jury exited the courtroom

at approximately 7:15 p.m. (Id. at pg. 927-28).

After the break, the jury sent a note to the court requesting "the Deadlock Instruction and

coffee filters."  (Id. at pg. 928).  The jury returned to the courtroom at approximately 7:35 p.m. (Id.

at pg. 929).  The court gave the jury the following "*Allen* charge":

THE COURT: Members of the jury, I received your note. "May we please have the Deadlock Instruction and coffee filters." They have made their way back there, I guess, the coffee filters.

All right. Ladies and gentlemen of the jury, I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far. Sometimes an early vote before discussion can make it hard to reach an agreement about the case later.

The vote, not the discussion might make it hard to see all sides of the case. We are all aware that it is legally permissible for a jury to disagree.

There are two things a jury can lawfully do. Agree on a verdict or disagree on what the facts of the case may truly be. There is nothing to disagree about on the law. The law is as I told you.

If you have any disagreements about the law, I should clear them up for you now. That should be my problem, not yours. If you disagree over what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.

I have only one request of you. By law, I cannot demand this of you, but I would like you to go back into the jury room, then taking turns tell each of the other jurors about any weaknesses of your own position.

You should not interrupt each other or comment on each other's views until each of you has had a chance to talk. After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case to be mistried and we'll discharge you with my very sincere thanks and appreciation for your service.

You may now retire to continue with your deliberations. I am going to hold off on ordering the pizzas until I hear from you. Thank you.

(Whereupon, jury panel exits courtroom at 7:40 p.m.)

(Id. at pgs. 930-31).

After deliberating for two more hours, the jury returned a verdict at approximately 9:40 p.m.

(Id. at pgs. 934-35).

The Eleventh Circuit has stated that "[a]lthough the *Allen* charge has been the subject of controversy, this circuit has recognized its continued viability." *See United States v. West*, 898 F.2d

1493, 1501 (11th Cir. 1990) (citing *United States v. Rey*, 811 F.2d 1453 (11th Cir.), *cert. denied*, 484

U.S. 830 (1987)). "Although the giving of an *Allen* charge has been criticized, a federal habeas court

can only grant relief if the instruction rendered the trial fundamentally unfair." *Johnson v. Dugger*,

817 F.2d 726 (11th Cir. 1987) (citing *Bryan v. Wainwright*, 511 F.2d 644, 646 (5th Cir. 1975)). The

jury's verdict can be reversed "only if we find that the giving of the *Allen* charge was inherently

coercive," *United States v. Dickerson*, 248 F.3d 1036, 1050 (11th Cir. 2001) (internal quotes

omitted), and that depends on the "totality of the circumstances." *United States v. Alls*, 232 Fed.

Appx. 953, 954 (11th Cir. 2007).

In *Johnson*, the trial court gave the following *Allen* charge:

You folks have been in deliberations now for approximately two hours, maybe a few minutes more than that, and although jurors sometimes deliberate longer than that before the instruction is given, I think -- you told me what the problem is, and I will give you this general information, and this is from page forty-eight of the standard charges.

Now, sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.

Now, we are all aware that it is legally permissible for a jury to disagree. There are two things a jury can lawfully do: Agree on a verdict or disagree on what the facts of the case may truly be.

Now, there is nothing to disagree about on the law. The law is as I told you. If you have any disagreements about the law, I should clear them for you now. That should be my problem, not yours.

If you disagree over what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.

I would request one thing of you. First of all, by law, I can't demand that you do this, but either tonight or perhaps at a later time if that becomes necessary, I want you to go back into the jury room, then perhaps each of you will, by taking turns, tell each of the other jurors about any weaknesses of your own position, and don't interrupt each other or comment until each of you have had the chance to complete your say, and after you've done that and you simply can't reach a verdict, then return to the

courtroom, and if we arrive at that point, then I will declare a mistrial in the case, and we will discharge all of you with a sincere appreciation of all concerned.

Now, do you want to continue tonight? Do you feel that you are able to continue longer tonight, and do you want to?

817 F.2d at pg. 730. In *Johnson*, the Eleventh Circuit concluded that the *Allen* charge did not render the trial fundamentally unfair. *Id*. The Eleventh Circuit noted that the "trial court here clearly indicated that the jurors could retire for the evening and renew deliberations the following day. Furthermore, the instructions themselves did not exert undue pressure on dissenting jurors to change their votes." *Id*. Finally, the Eleventh Circuit noted that in *Bryan*, it had decided that even though "the trial court not only urged dissenting jurors to consider the majority position, but also called the jury back from deliberations and asked them to try and arrive at a verdict within twenty minutes[,]" Bryan's "conviction could not be collaterally attacked." The Eleventh Circuit determined that Johnson's case presented "an atmosphere which was less coercive than the atmosphere created by the trial court in *Bryan*." *Id*.

The *Allen* charge given in Petitioner's case is essentially identical to the *Allen* charge given in *Johnson*. Further, as in *Johnson*, the trial court in Petitioner's case informed the jury that they could leave for the night and return in the morning. Moreover, in Petitioner's case, when the jurors decided that they did not want to leave, but instead wanted to continue to deliberate, the court assured the jurors that they would not be sequestered, and made arrangements for dinner and coffee. Further, neither the trial court nor the *Allen* charge itself put pressure on any dissenting jurors to change their votes. Finally, the court clearly instructed the jurors that if they could not reach a verdict, the court would declare a mistrial and discharge the jury.

This Court cannot conclude that, under the totality of the circumstances, the *Allen* charge rendered Petitioner's trial fundamentally unfair. There is no indication that the jury was coerced into

14

rendering a verdict.[10] The state court's denial of this claim was neither contrary to, nor an

unreasonable application of clearly established Federal law, as determined by the Supreme Court of

the United States, nor an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

Accordingly, Ground Four does not warrant federal habeas relief.

**Conclusion**

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas

relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and

close this case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS
DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's

denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate

of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial

showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing,

Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the

---

[10]The Court notes that where a jury returns a verdict soon after receiving an *Allen* charge, coercion is suggested. *See Lowenfield v. Phelps*, 484 U.S. 231, 254 (1988) (Marshall, J., dissenting). In Petitioner's case, however, the jury deliberated two hours after receiving the *Allen* charge before reaching a verdict (Respondent's Ex. 1, Vol. VIII at pgs. 930-35). *See e.g., Webb v. United States*, 398 F.2d 727, 729 (5th Cir.1968) (coercion not suspected where, after receiving *Allen* charge, jury had to deliberate for two additional hours before reaching a verdict).

constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on September 16th, 2010.

_____
JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Counsel of Record

16